UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------×
OSHAINE SHEPHERD,

        *Plaintiff*,

     *v*.

HOST INTERNATIONAL, INC., *and* MARY E. COLLINS, *individually*,

        *Defendants*.
-----------------------------------------------------------------------×

17 CV 3500

**FIRST AMENDED COMPLAINT**

Plaintiff Oshaine Shepherd, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants Host International, Inc., and Mary E. Collins, individually, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Oshaine Shepherd, a dark-skinned black man of Jamaican national origin, is employed by Defendant Host International, Inc. ("Host"), a food service company responsible for the operation of restaurants and other food service amenities at New York's John F. Kennedy International Airport ("JFK"). Defendant Mary E. Collins was Mr. Shepherd's supervisor at Host.

2. Defendants discriminated against Mr. Shepherd by treating him less well than his lighter-skinned and/or female colleagues. Mr. Shepherd and other dark-skinned male employees were forced to perform manual labor and other menial tasks outside of their job responsibilities, denied sick leave, verbally berated, and forced to work shifts that light-skinned and/or female Host employees were not.

3. Further, Defendants discriminated against Mr. Shepherd on the basis of his disability by failing to engage in the interactive process to identify a reasonable accommodation, failing to accommodate him, and treating him less well because of his disability.

1

4. Plaintiff seeks damages and costs against Host for discriminating against him on the basis of his race, color, gender, and national origin by subjecting him to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*.

5. Plaintiff also seeks damages and costs against Host for discriminating against him on the basis of his disability by subjecting him to a hostile work environment and failing to provide him with a reasonable accommodation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

6. Plaintiff also seeks damages and costs against Host for retaliating against him for his complaints of discrimination, in violation of Title VII and the ADA.

7. Plaintiff also seeks damages and costs against both Defendants for discriminating against him on the basis of his race, color, national origin, gender, and disability, failing to provide him with a reasonable accommodation, and retaliating against him for his complaints of discrimination, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

**JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES**

8. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the ADA and Title VII.

9. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

10. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

2

11. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue letter relating to the discriminatory acts described in this Complaint. This action was properly instituted within 90 days of the issuance of the Right-to-Sue letter.

**PARTIES**

12. Plaintiff, at all times relevant hereto, was and is a resident of Queens County in the State of New York.

13. Upon information and belief, at all times relevant hereto, Host was and is a corporation organized under the laws of the State of Delaware with headquarters located at 6905 Rockledge Drive, Bethesda, Maryland 20817.

14. Upon information and belief, at all times relevant hereto, Defendant Collins was and is an employee of Host and a resident of the State of New York.

**STATEMENT OF FACTS**

15. Mr. Shepherd is a dark-skinned black man of Jamaican descent.

16. Mr. Shepherd has 15 years of experience in the food and beverage services industry and holds a culinary arts degree, as well as professional certifications from Hazard Analysis Critical Control (HACCP) and in TIPS Alcohol and Points (Preventative Food Safety Management system). Prior to his employment at Host, Mr. Shepherd was a sous chef at Gabrielle's in the Bronx, New York, and worked at Grand Lido Resort in Jamaica, as well as other upscale hotel chains and spas.

17. In and around 2007, Mr. Shepherd began working at Host.

18. Host operates various food and drink establishments at JFK including Todd English Bonfire ("Todd English"), Trafalgar Pub, Sammy's Beach Bar and Grill, Balducci's Food Lovers Market, Wolfgang Puck Pizza, and two Starbucks locations.

19. Throughout his employment at Host, Mr. Shepherd was an outstanding employee who consistently fulfilled his job responsibilities.

20. During his tenure with Host, Mr. Shepherd consistently received excellent performance evaluations, passed New York City Department of Health inspections, and earned positive ratings from Host's "secret shoppers."

21. Host promoted Mr. Shepherd to Assistant Food and Beverage Manager in 2010.

22. As Assistant Food and Beverage Manager, Mr. Shepherd was responsible for managing the day-to-day operations of Todd English; training associates; assisting with opening and closing other Host JFK restaurant locations; reviewing menus daily; and reducing costs.

23. Mr. Shepherd's excellent performance continued in his new role, where he maintained the highest internal food audit scores within his Host team and a score of over 90% on secret shopper tests.

24. In and around 2015, Ms. Collins, a white woman, became Mr. Shepherd's supervisor.

25. Mr. Shepherd immediately noticed that Ms. Collins treated him and other dark-skinned men less well than their light-skinned and/or female coworkers.

26. Ms. Collins required dark-skinned male employees to work long hours, perform menial work, and complete whatever tasks light-skinned and/or female employees did not want to do.

27. Ms. Collins regularly required Mr. Shepherd to work 12 to 13 hours per day, sometimes forcing him to work seven days in a row without a day of rest.

28. Black or Indian male employees, including Mr. Shepherd, regularly worked 50 to 70 hours in a work week, sometimes without meal breaks, at Ms. Collins's direction.

29. Light-skinned and/or female assistant managers were never required to work such a schedule.

30. Ms. Collins would readily assist light-skinned and/or female employees with staffing issues, yet she forced dark-skinned male employees to personally work any shifts their subordinates missed.

31. When Mr. Shepherd complained to Ms. Collins about the discriminatory treatment, she responded with hostility, dismissed his concerns, and discouraged him from complaining further, telling him to "stop behaving like a four-year-old child."

32. After Mr. Shepherd's complaint, Ms. Collins began retaliating against Mr. Shepherd by increasing her discriminatory and harassing treatment and selectively enforcing rules against him.

33. For example, Ms. Collins reprimanded Mr. Shepherd if he opened his restaurant behind schedule, but did not reprimand light-skinned and/or female employees if they did the same.

34. Ms. Collins treated dark-skinned male managers less well than light-skinned and/or female managers by requiring dark-skinned male managers to perform non-managerial work, such as cooking, cleaning, and other manual labor, including washing dishes and unpacking and carrying heavy boxes.

35. When Mr. Shepherd complained, Ms. Collins would threaten him, stating "I can fire you right now," and "If you refuse, I will terminate you."

36. Ms. Collins would intentionally understaff the locations managed by dark-skinned male employees by shifting associates from those locations to locations managed by light-skinned and/or female employees, forcing the dark-skinned male managerial employees to perform menial, non-managerial work.

37. Anything that required any amount of manual labor would become Mr. Shepherd's job.

38. Ms. Collins required Mr. Shepherd to perform this work solely because he is a black and Jamaican dark-skinned man; again, light-skinned and/or female managers were never required to perform such tasks.

39. Ms. Collins also permitted light-skinned and/or female employees to use sick leave as they saw fit, while dark-skinned male employees were denied that freedom.

40. Ms. Collins permitted light-skinned and/or female employees to call out sick with as little as three hours' notice, while Mr. Shepherd was refused sick leave even when providing more than seven hours' notice.

41. Ms. Collins required Mr. Shepherd to do inventory more frequently than light-skinned and/or female assistant managers.

42. Ms. Collins consistently rejected Mr. Shepherd's vacation requests on the grounds that he needed to complete inventory.

43. For example, Ms. Collins denied Mr. Shepherd's January 30, 2016 vacation request—which was made well in advance of the requested vacation dates—without any explanation, other than the single word "inventory" on the request form.

44. Further, on the occasions that Mr. Shepherd *was* able to go on vacation, Ms. Collins continued to subject him to impossibly strict policies and requirements, such as expecting him to fly back to New York City during his vacation just to complete inventory.

45. In comparison, Ms. Collins permitted Patrick Goh, a similarly-situated Asian and light-skinned man, to go on vacation, even if it was his regular inventory day.

46. Ms. Collins permitted female Host employees to take time off for Mothers' Day, but did not permit male Host employees, especially dark-skinned men, to take time off for Fathers' Day.

47. Defendants also discriminated against Mr. Shepherd on the basis of his disability.

48. In and around December 2015, Mr. Shepherd's doctor diagnosed him with a foot injury: Mr. Shepherd's foot was swollen and causing him significant pain.

49. Mr. Shepherd delivered a doctor's note to Ms. Collins and requested to be relieved from work because of his injury.

50. During this period, Mr. Shepherd could barely walk, and his job required him to spend hours at a time on his feet.

51. Ms. Collins, though she often granted similar accommodations to light-skinned and/or female employees, refused to even discuss the possibility with Mr. Shepherd, stating "I don't know what to tell you."

52. On or about January 28, 2016, Mr. Shepherd's podiatrist diagnosed him with posterior tibial tendonitis.

53. Mr. Shepherd's condition was exacerbated by Ms. Collins's refusal to provide or discuss a reasonable accommodation for Mr. Shepherd: Ms. Collins continued forcing Mr. Shepherd to perform physically demanding, menial work, even though it worsened his disability.

54. For example, on February 25, 2016, Ms. Collins forced Mr. Shepherd to fill in as a chef, even though his disability impaired his ability to stand for long periods of time.

55. Mr. Shepherd suggested that Ms. Collins transfer a chef over from another terminal.

56. Ms. Collins refused Mr. Shepherd's request and refused to discuss the possibility of other accommodations, telling Mr. Shepherd only, "You don't have a choice. It is your job to cook when there is no cook."

57. On February 10, 2016, Mr. Shepherd finished inventory at 8:45 p.m. and left work, as he had to open early the next day.

58. The next morning, February 11, 2016, Ms. Collins complained that Mr. Shepherd had left work at night without her "permission" and told him that she could just "take [his] Port Authority ID and fire [him]."

59. That same day, Mr. Shepherd reported the incident to Nydia Garcia, an Host Human Resources ("HR") employee, and complained of Ms. Collins's discriminatory treatment, notifying Host of the hostile work environment and unfair treatment.

60. However, Mr. Shepherd never received any response from Host HR, and the discrimination and harassment was never addressed.

61. Instead, Host required Mr. Shepherd to continue in the hostile work environment, forcing him to work as a server at Todd English that same day, despite his complaints of discrimination and harassment.

62. Moreover, Host's retaliation increased after Mr. Shepherd's complaints.

63. As Ms. Collins' offensive, discriminatory conduct continued unabated, Mr. Shepherd again complained to HR on or about March 28, 2016.

64. Again, Host did not respond.

65. On or about April 2, 2016, Mr. Shepherd submitted another doctor's note, stating that he could not stand for six straight hours without a break.

66. Even in light of these restrictions, Ms. Collins continued to require Mr. Shepherd to fill in for missing employees and perform physical labor.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Hostile Work Environment in Violation of Title VII**
**(Against Host)**

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68. Title VII prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race, color, gender, or national origin.

69. Host discriminated against Plaintiff on the basis of his race, color, gender, and national origin by subjecting him to a hostile work environment, including offensive harassment and treating him less well than other employees.

70. As such, Host has violated Title VII.

71. As a direct and proximate consequence of Host's race, color, gender, and national origin discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

72. Host's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Host.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of the ADA
### (Against Host)

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

74. The ADA prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of disability.

75. Host discriminated against Plaintiff on the basis of his disability by subjecting him to a hostile work environment, including offensive harassment and treating him less well than other employees.

76. As such, Host has violated the ADA.

77. As a direct and proximate consequence of Host's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

78. Host's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Host.

## THIRD CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against All Defendants)

79. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 78 with the same force as though separately alleged herein.

80. The NYCHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of race, color, gender, national origin, or disability.

81. Defendants discriminated against Plaintiff on the basis of his race, color, gender, national origin, and disability by subjecting him to a hostile work environment, including offensive harassment and treating him less well than other employees.

82. As such, Defendants have violated Title VII.

83. As a direct and proximate consequence of Defendants' race, color, gender, national origin, and disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

84. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation in Violation of the ADA
### (Against Host)

85. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

86. The ADA requires an employer to engage in a mandatory interactive process to identify a reasonable accommodation for an employee's disability.

87. Host violated the ADA when it refused to engage in the mandatory interactive process to identify and provide a reasonable accommodation for Plaintiff's disability.

88. As a direct and proximate consequence of Host's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (Against Host)

89. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 88 with the same force as though separately alleged herein.

90. Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

91. Plaintiff engaged in protected activity under Title VII when he properly complained to Host about discrimination unlawful under Title VII.

92. Host retaliated against Plaintiff by subjecting him to further discrimination and harassment.

93. As such, Host has violated Title VII.

94. As a direct and proximate consequence of Host's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the ADA
### (Against Host)

95. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 94 with the same force as though separately alleged herein.

96. The ADA prohibits an employer from retaliating against an employee for engaging in protected activity under the ADA.

97. Plaintiff engaged in protected activity under the ADA when he properly complained to Host about discrimination unlawful under the ADA and requested a reasonable accommodation for his disability.

98. Host retaliated against Plaintiff by subjecting him to further discrimination and harassment.

99. As such, Host has violated the ADA.

100. As a direct and proximate consequence of Host's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### (Against All Defendants)

101. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 100 with the same force as though separately alleged herein.

102. The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

103. Plaintiff engaged in protected activity under the NYCHRL when he properly complained to Defendants about discrimination unlawful under the NYCHRL and requested a reasonable accommodation for his disability.

104. Defendants retaliated against Plaintiff by subjecting him to further discrimination and harassment, in violation of the NYCHRL.

105. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For the seventh cause of action, damages to be determined at trial; and

H. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 12, 2017

By: _/s/ Walker G. Harman, Jr._
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*